[S.F. No. 23072. In Bank. Mar. 12, 1976.]

DALE D. SCHWALBE et al., Plaintiffs and Appellants, v.
THOMAS H. JONES, JR., Defendant and Respondent.

COUNSEL

Herbert Resner, Stephen H. Tabor, Belli, Ashe, Ellison & Choulos and Belli, Ashe, Ellison, Choulos & Lieff for Plaintiffs and Appellants.

Robert E. Cartwright, Edward I. Pollock, William H. Lally, Stephen I. Zetterberg, Robert G. Beloud, Ned Good, David B. Baum, Arne Werchick, Elmer Low, Sanford M. Gage, Leonard Sacks and Bruce Cornblum as Amici Curiae on behalf of Plaintiffs and Appellants.

Gassett, Perry, Katzen, Frank & Bondelie, Gassett, Perry, Frank & Bondelie and Ronald L. Stefani for Defendant and Respondent.

OPINION

SULLIVAN, J.—In *Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], we held that former section 17158 of the Vehicle Code, the so-called "guest statute," was violative of the equal protection guarantees of the United States and California Constitutions insofar as it precluded recovery by a nonowner "guest" against the driver or one legally liable for the conduct of the driver on account of personal injury to or death of the guest proximately resulting from the simple negligence of the driver. We expressly declined at that time to intimate an opinion as to the validity of the remaining portion of the statute, dealing with injury to, or death of, an owner riding as a passenger in his own vehicle.[1] Today we squarely confront the latter issue.

---

[1] In 1973, following our *Brown* decision, section 17158 was amended. All reference to "guests" was deleted, but the provision as it related to owners was reenacted. The section now provides: "No person riding in or occupying a vehicle owned by him and driven by another person with his permission has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the owner during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver."

Although the event which underlies the instant litigation occurred prior to our *Brown* decision, and the applicable version of section 17158 was technically that in effect prior to the 1973 amendment, the current statute contains identical language relative to actions by owner-passengers. Therefore we essentially consider here the validity of the current statute.

This is an action for wrongful death brought by the parents of the decedent Patricia Schwalbe Jones and arising out of an accident which occurred on the MacArthur Freeway in Oakland on June 13, 1967. Decedent, who had been recently married to defendant Thomas H. Jones, Jr., owned two automobiles, a Triumph sports car and a Renault sedan. The Renault had been inoperable for about six months and decedent had decided to tow it to Saratoga to give it to a friend. A nylon towline was obtained, and the Renault was tied by the frame to a trailer hitch on the Triumph, leaving some four to five feet between the vehicles. Decedent's husband (defendant Jones) who was to drive the Triumph, urged decedent to ride with him and to allow a friend, one Albert Pol, to steer the Renault. Decedent at first refused to do so, insisting that she steer the Renault; finally she agreed to allow Pol to steer and decided to ride in the vehicle as passenger. The parties reached the freeway without incident and were headed south, travelling at from 40 to 50 miles an hour, when the Renault began to swerve violently and the towline broke. The car left the freeway and overturned, resulting in fatal injuries to decedent. Pol sustained no serious injuries.

Decedent's parents, Dale and Leone Schwalbe, brought the instant action against decedent's husband, alleging both negligence and willful misconduct. At the close of their evidence the trial court granted defendant's motion for nonsuit on the negligence count on the ground that section 17158 precluded recovery on that theory. Trial proceeded on the count alleging willful misconduct, resulting in a verdict for defendant. Plaintiffs appeal from the ensuing judgment. Their major contention, as indicated above, is that the owner portion of former section 17158 (which now constitutes the whole of the present section—see fn. 1, *ante*) suffers from the same constitutional defect which afflicted the "guest" portion in that the distinction now created between owner-passengers and nonowner-passengers lacks any rational legislative basis. They also contend that the trial court erred in its instructions to the jury on the issue of willful misconduct.

## I

"The . . . basic and conventional standard for reviewing economic and social welfare legislation in which there is a 'discrimination' or differentiation of treatment between classes or individuals . . . manifests restraint by the judiciary in relation to the discretionary act of a co-equal branch of government; in so doing it invests legislation involving such differentiated treatment with a presumption of constitutionality and 'requir[es]

merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose.' (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784 . . . .)" (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16 [112 Cal.Rptr. 786, 520 P.2d 10].) "[T]he burden of demonstrating the invalidity of a classification under this standard rests squarely upon. *the party who assails it.* (*Lindsley* v. *Natural Carbonic Gas Co.* (1911) 220 U.S. 61, 78-79 . . .; *Blumenthal* v. *Board of· Medical Examiners* (1962) 57 Cal.2d 228, 233 . . .; see also *Developments in the Law—Equal Protection* (1969) 82 Harv.L.Rev. 1065, 1077-1087.)" (*Id.,* at p. 17.)

The classification established by former section 17158 following invalidation of the guest provision of that statute in *Brown* v. *Merlo, supra,* 8 Cal.3d 855 (and the classification established by present § 17158—see fn. 1, *ante*), distinguishes between passengers who are not owners of the vehicle in which they are riding and passengers who are owners; whereas the former class of passengers may recover against the driver of the vehicle for injuries or death sustained due to simple negligence on his part, the latter class may not recover unless the injuries or death result from the intoxication or willful misconduct of the driver. The issue before us is therefore this: Have plaintiffs borne the burden of establishing that this classification bears no rational relationship to any conceivable legitimate state purpose?[2]

---

[2]We are aware, of course, that this court in *Brown* v. *Merlo, supra,* 8 Cal.3d 855, used language which indicated some departure from the traditional equal protection standard. Thus, our opinion there might be read to imply that a court, in determining whether a legislative classification bears a rational relationship to any legitimate state purpose, should restrict its examination to "justifications [which] have traditionally been advanced in both judicial precedent and academic commentaries . . . ." (*Id,* at p. 864; see also p. 865, fn. 7.) Further, our use there of words such as "sufficient" and "substantial" in varying combinations describing the basic standard might be seen to suggest a lightening of the burden borne by the assailant under the traditional test. Finally, the technique of expressing a suggested legislative purpose in terms of a "superclass" ("recipients of hospitality"—*id,* at pp. 864-866), and thereupon proceeding to level the charge of underinclusion at the particular statute, might be interpreted to ignore the fundamental principle that the Legislature, in dealing with what it deems to be an evil, is not held to the rigid choice of regulating all cases affected by that evil or none at all. (See *Silver* v. *Silver* (1929) 280 U.S. 117, 123-124 [74 L.Ed. 221, 225-226, 50 S.Ct. 57, 65 A.L.R. 939]; *Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 132-133 [216 P.2d 825, 13 A.L.R.2d 252].)

We are persuaded that to elevate the aforesaid language into doctrinal concept, and thus to dilute the traditional standard which we have here expressed, would result in the substitution of judicial policy determination for established constitutional principle. (See Note, *Judicial Activism in Tort Reform* (1974) 21 U.C.L.A.L.Rev. 1566, 1569; see also Note, *The Supreme Court of California 1972-1973* (1974) 62 Cal.L.Rev. 406, 648, 652-660; Note, *Legislative Purpose, Rationality, and Equal Protection* (1972) 82 Yale L.J. 123, 132-138.) Accordingly we note our determination, manifested by our restatement of the

In *Patton* v. *La Bree* (1963) 60 Cal.2d 606 [35 Cal.Rptr. 622, 387 P.2d 398], we were faced with essentially the same question. There it was contended that former section 17158 was invalid insofar as it denied recovery to all owner passengers, whether they gave compensation for the ride or not, while permitting recovery to nonowner passengers who had given compensation. Rejecting this contention, we stated: "It cannot be said that the classification made by the Legislature in the 1961 amendment to section 17158 [adding the owner provision] is arbitrary or that no set of facts reasonably can be conceived that would sustain it. The relationship between a driver and the owner of the car who is a passenger is obviously different from that existing between a driver and a passenger who is not an owner. In making the distinction between owner-passengers and nonowner-passengers, the Legislature may have taken into consideration the fact that an owner generally has the right to direct and control the driver, but a nonowner ordinarily does not have that right." (60 Cal.2d at p. 609.)

It is here contended, however, that the "fact" upon which our *Patton* reasoning was premised—i.e., "that an owner generally has the right to direct and control the driver, [while] a nonowner generally does not have that right"—is illusory. It is urged that under modern traffic conditions accidents occur with such suddenness that there is no realistic opportunity for intercession by a passenger, whether he be the owner or not. Moreover, it is pointed out, when such an opportunity does exist, verbal warning or command is often ineffective and attempts at physical acquisition of control tend to increase rather than diminish the chances of calamity.

These arguments simply miss the point of our *Patton* decision. The owner's *right* to direct and control the driver when he allows another to drive his car and himself rides as a passenger distinguishes him from the nonowner-passenger not in terms of his *ability* to exercise effective control[3] but in terms of his *standing* to seek recovery for injuries which

---

governing constitutional principles in *D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d 1, that the language of *Brown* to which we have adverted should not be interpreted as working any fundamental change in the constitutional principles we here reiterate and reaffirm.

[3]Even if plaintiffs' approach to *Patton* is adopted, we are not persuaded that modern traffic conditions and the dangers inherent in physical intercession obliterate any relevant distinction between the owner-passenger and the nonowner-passenger in this respect. Admonitions by an owner relative to speed and careful conduct are bound to be heeded to a greater extent than similar admonitions by one who does not own the vehicle in which the parties are travelling. The fact that the respective situations of the owner and

he sustains due to the ordinary negligence of the driver which he has selected. Thus, the thrust of our *Patton* holding is this: The Legislature might reasonably have concluded that the owner of an automobile who, rather than driving himself, selects another and allows him to drive, subject to the owner's right to direct and control such driving, should not be permitted to recover when the ordinary negligence[4] of that driver results in injury to the owner.

The rationality and cogency of this determination is best considered in the context of the 1973 reenactment of former section 17158.[5] When this court, in February of 1973, held in the *Brown* case that the guest portion of former section 17158 was offensive to the equal protection guarantees of the state and federal Constitutions, the Legislature found itself called upon to make a determination whether the owner portion of the statute was subject to the same constitutional objection and should be repealed along with the guest portion. Guidance in making this determination was afforded the lawmakers in one of the closing paragraphs of our *Brown* opinion, where we stated: "Nothing we have said is intended to imply that only the common law rules of negligence can govern automobile liability. We hold only that *in undertaking any alteration or reform of such rules the Legislature may not irrationally single out one class of individuals for discriminatory treatment.*" (8 Cal.3d at p. 882; italics added.) Addressing itself to the owner provision with this standard in mind, the Legislature promptly reenacted it as new section 17158. Although here,

---

nonowner are similar in some respects from the point of view of effective control of the driver does not alter the fact that *in general* an owner is capable of exercising more of such control.

[4]The statute distinguishes between cases involving ordinary negligence and those in which injury or death proximately results from intoxication or willful misconduct on the part of the driver. This clearly represents a determination by the Legislature that, whereas ordinary negligence on the part of the driver should not render him liable to suit by the owner who allows him to drive and then proceeds to ride as a passenger, certain forms of more heinous conduct on the part of the driver should be treated differently—at least in the absence of equally reprehensible conduct on the part of the owner-passenger which would prevent or diminish recovery under settled common law principles. (See *Williams* v. *Carr* (1968) 68 Cal.2d 579 [68 Cal.Rptr. 305, 440 P.2d 505], and cases there discussed and cited.)

[5]As we have noted in footnote 1, *ante,* the version of section 17158 which is here applicable as a technical matter is that in effect prior to the 1973 amendment. However, because the pre-1973 and post-1973 statutes contain identical language relative to actions by owner-passengers, because our decision in *Patton* has already explained the rational basis underlying the pre-1973 statute (see text accompanying fns. 3 and 4, *ante*), and because all of the considerations we now proceed to discuss were applicable in substance when the pre-1973 version of section 17158 was passed in 1961 (see especially fns. 7 and 9, *post*), we make the following observations from the point of view of the 1973 statute now in effect.

as in the case of the 1961 statute, legislative history is scant with respect to the actual thinking of the lawmakers,[6] it is not difficult to reconstruct the probable course of their reasoning:

In a line of cases extending at least back to 1966, supported by authorities from other jurisdictions extending back considerably further than that, the courts of this state had indicated that a liability insurance provision excluding the named insured or members of his family from coverage was valid and not in contravention of public policy. (See *Travelers Indem. Co.* v. *Colonial Ins. Co., supra,* 242 Cal.App.2d 227, 234 [51 Cal.Rptr. 724][7]; *Farmers Ins. Exch.* v. *Geyer* (1967) 247 Cal.App.2d 625, 629-632 [55 Cal.Rptr. 861]; *Farmers Ins. Exch.* v. *Brown* (1967) 252 Cal.App.2d 120, 122 [60 Cal.Rptr. 1]; *Hale* v. *State Farm Mut. Auto. Ins. Co.* (1967) 256 Cal.App.2d 177, 180-181 [63 Cal.Rptr. 819]; *Paul Masson Co.* v. *Colonial Ins. Co.* (1971) 14 Cal.App.3d 265, 269 [92 Cal.Rptr. 463]; cf. *Farmers Ins. Exch.* v. *Frederick* (1966) 244 Cal.App.2d 776, 781, fn. 3 [53 Cal.Rptr. 457]; see generally Annot., 46 A.L.R.3d 1061.)[8] In view of these authorities the Legislature in 1970 had amended section 11580.1 of the Insurance Code to expressly permit such an exclusion. (Stats. 1970, ch. 300, § 4, p. 573.)[9] Moreover, it was aware that section 11580.2 of the

---

[6]It is interesting to note that Assembly Bill No. 1094 as originally introduced contemplated repeal of former section 17158 in its entirety, but that upon recommendation of the Assembly Committee on Judiciary the bill was amended before passage to preserve the owner portion of the former section. (See 2 Assem.J. (1973-1974 Reg. Sess.) p. 2646.) In *Brown,* of course, as we have pointed out above, we specifically refrained from expressing an opinion as to the validity of the owner portion. (See 8 Cal.3d at p. 862, fn. 3.)

[7]*Travelers Indemnity,* the first reported California case to uphold the provision in question, clearly implied that such provisions were available and in use in this state long before the date of that case. (See 242 Cal.App.2d at pp. 234-235, fn. 7, and accompanying text.) It is likely that the 1961 Legislature, in passing the pre-1973 version of section 17158, did so in full awareness of the prevalence of such provisions. Thus the reasoning which follows is as applicable to the 1961 version (i.e., the version technically here before us—see fn. 5, *ante*) as it is to the present version.

[8]In *State Farm Mut. Auto. Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193, at page 208 [110 Cal.Rptr. 1, 514 P.2d 953], we disapproved certain language in the *Travelers Indemnity* and *Hale* cases. In *Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, at page 505 [99 Cal.Rptr. 617, 492 P.2d 673], we disapproved certain other conclusions reached in *Travelers Indemnity.* The material disapproved in those cases, however, was not relevant to the point here at issue.

[9]Section 11580.1, subdivision (c), has provided since the enactment of the section in 1970 that a policy of automobile liability insurance may by appropriate policy provision be made inapplicable to: "... (5) Liability for bodily injury to an insured."

We may judicially notice as a matter of generalized knowledge (Evid. Code, § 451, subd. (b)) that substantially all such policies presently contain exclusions of this nature—which exclusions. if stated in unambiguous terms clearly operate to preclude an owner from recovering under his own liability policy under any circumstances, including

same code precluded recovery by the owner under the uninsured motorist provisions of his policy.[10] (See *Hale* v. *State Farm Mut. Auto. Ins. Co., supra,* 256 Cal.App.2d 177, 181-183; see also *State Farm Mut. Auto. Ins. Co.* v. *Jacober, supra,* 10 Cal.3d 193, 205.)

Thus, when in 1973 the Legislature faced the question whether the owner portion of former section 17158 should be reenacted, it did so in the context of its own prior enactments, whose practical effect was to preclude the owner from any recourse to his own policy. The lawmakers knew that in the absence of a statutory direction to the contrary, an owner-passenger injured through the ordinary negligence of one he had selected and allowed to drive his vehicle could and would seek his recovery from the insurance or personal assets of the driver. This, the Legislature obviously concluded, was simply not fair. Clearly an owner cannot recover for injuries sustained due to his own negligence while he himself is at the wheel. If, rather than driving himself, he allows another to drive and rides as a passenger, retaining some power of supervision, should he be in any better position—and *at the expense of the driver?* Apparently concluding that he should not, the lawmakers proceeded to reenact the owner portion of former section 17158.

Plaintiffs, in order to sustain their position that section 17158 denies them equal protection of the laws, must not be content to argue that the above reasoning was unwise, or that the purpose of the Legislature could have been better furthered by another means.[11] Nor is it enough for

---

those here at issue. The case of *State Farm Mut. Auto. Ins. Co.* v. *Jacober, supra,* simply held that the particular exclusion there in question was ambiguous with respect to whether the named insured was to be excluded from recovery when a second "insured," the permissive user-driver, negligently injured him. It is to be assumed that insurance companies will be studious to avoid such ambiguity in the future by modelling their exclusions upon that which was approved in the *Geyer* and *Brown* cases, a course which we clearly invited in *Jacober* (see 10 Cal.3d at p. 206). In so doing they will merely avail themselves of an exclusion expressly permitted by section 11580.1 of the Insurance Code. Any suggestion in *Jacober* that this would contravene some vaguely conceived public policy (see 10 Cal.3d at pp. 205-206) must surely founder upon the explicit language used by the Legislature to authorize such exclusions. (See *Farmers Ins. Exch.* v. *Geyer, supra,* 247 Cal.App.2d 625, 629-632; *Travelers Indem. Co.* v. *Colonial Ins. Co., supra,* 242 Cal.App.2d 227, 234; see generally Annot., *supra,* 46 A.L.R.3d 1061.)

[10] As here relevant, Insurance Code section 11580.2, subdivision (b) (2), provides today, as it provided in 1970: "The term 'uninsured motor vehicle' shall not include an automobile owned by the named insured or any resident of the same household . . . ."

[11] We are urged to consider the fact that in some cases, among which the case at bar might be included, the surrogate driver takes the wheel not at the insistence or instance of the owner but pursuant to his own request or demand. In light of this, and in view of the fact that existing common law principles might well be extended to eliminate or ameliorate the extent of a negligent driver's liability to an owner guilty of negligence in

them to show that the lawmakers, in addressing similar problems in similar areas, have made dissimilar judgments.[12] The burden cast upon them is that of demonstrating that the means chosen by the Legislature were irrational, or that the purpose which they furthered was not a legitimate legislative concern. This they have not done. As the foregoing analysis indicates, the Legislature, pursuing the clearly legitimate goal of achieving a fair distribution of liability for damage caused by unreasonable conduct, concluded that the owner of a motor vehicle, whether he drives it himself or selects another to act as his chauffeur, should not recover for injuries sustained by him[13] due to the negligent operation of that vehicle—especially in light of the fact that in the case of the surrogate driver any such recovery would be at the expense of that driver. We may disagree with this conclusion, but we cannot brand it as beyond the pale of reason.[14] To do so would be to seriously erode our constitutional function. ■ We conclude therefore that the motion for nonsuit on the negligence count was properly granted.[15]

---

selecting that driver (see generally *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]), it is contended that the net effect of the present statute is only to bar from recovery those persons who were *not* negligent in their selection of a surrogate driver. This argument, however, falls far short of demonstrating that the Legislature was acting in an irrational manner when it determined that an owner should not be able to recover against a driver he has allowed to act as his chauffeur unless that driver is guilty of heinous and totally unforeseeable conduct such as intoxication or willful misconduct.

[12]The guest statutes governing aircraft and pleasure boats (Pub. Util. Code, § 21406 and Harb. & Nav. Code, § 661.1 respectively), which made no distinction between owner "guests" and nonowner "guests," were repealed in 1973. (Stats. 1973, ch. 803, p. 1425.) No additional provision was added relative to owners. As the United States Supreme Court has stated: "There is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied . . . . It is enough that the . . . statute strikes at the evil where it is felt and reaches the class of cases where it most frequently occurs." (*Silver* v. *Silver, supra,* 280 U.S. 117, 123-124 [74 L.Ed. 221, 225-226]; see also *Werner* v. *Southern Cal. etc. Newspapers, supra,* 35 Cal.2d 121, 132-133.)

[13]It belabors the obvious to note that the negligent surrogate driver is not freed of all liability for the results of his negligence by the statute we here consider. Thus, other parties who may sustain injuries due to the driver's negligence, including other passengers in the vehicle, may seek recovery against him. It is only the owner, who has entrusted the conduct of the vehicle to the driver, who is barred from seeking such recovery—and even he may recover if the driver's conduct descends to the level of willful misconduct.

[14]Our conclusion renders unnecessary a consideration of whether the alleged legislative purposes involved with respect to the "guest" portion of former section 17158—to wit, the encouragement of hospitality and the elimination of collusive fraud—provide an additional basis or bases for the provision we here consider.

[15]Plaintiffs belatedly suggest that the version of section 17158 applicable to this case (i.e., the 1961 version—see fn. 1, *ante*) was invalid because it failed to comply with the requirements of article IV, section 9 (formerly § 24), of the state Constitution. As here relevant, the indicated section provides: "A statute shall embrace but one subject, which

## II

■ Plaintiffs also contend that the trial court erred in its instructions to the jury on the issue of willful misconduct. Although the court instructed the jury on the definition of willful misconduct in accordance with former BAJI No. 5.68, it is urged that it should not have refused to give two proffered instructions, based on *Williams* v. *Carr, supra,* 68 Cal.2d 579, which indicated in essence that an intent to injure is not a necessary ingredient of willful misconduct. It is also urged that the court should not have refused to read to the jury certain sections of the Vehicle Code dealing with the basic speed law and the safe towing of vehicles.[16]

Former BAJI No. 5.68 as then in use provided: "Wilful misconduct means intentional wrongful conduct, done either with knowledge that serious injury probably will result or with a wanton and reckless disregard of the possible results." This language, in stating that it is the proscribed *conduct* which must be intentional, clearly implies that the *result* of that conduct in terms of injury need not be intended. The proffered instructions based on *Williams* v. *Carr, supra,* 68 Cal.2d 579, simply make explicit what is clearly implicit in the instructions given. In so doing, however, they place excessive emphasis on intended results at the expense of the quality of conduct. It was not error to refuse to give them in this case.

■ As to the court's refusal to read the Vehicle Code sections, we first observe that mere failure to perform a statutory duty does not in and of itself constitute willful misconduct. (*Porter* v. *Hofman* (1938) 12 Cal.2d

---

shall be expressed in its title. If a statute embraces a subject not expressed in its title, only the part not expressed is void." The argument rests upon the wholly erroneous premise that the "title" of section 17158 prior to 1973 was that appearing in the marginal notes of the applicable statute and the code version, i.e., "Liability to 'Guest.' " This "title," it is urged, cannot comprehend a provision relating to liability to owner-passengers. The statute applicable to this case (Stats. 1961 (Reg. Sess.), ch. 1600), however, is entitled "An act to amend Section 17158 of the Vehicle Code, relating to the automobile guest statute." The section thus amended (the 1959 version) was enacted as a part of a comprehensive revision of the Vehicle Code (Stats. 1959 (Reg. Sess.), ch. 3) and is found in Division 9 ("Civil Liability"), Chapter 1 ("Civil Liability of Owners and Operators of Vehicles"). We believe that the placement of section 17158 in this statutory context results in no violation of article IV, section 9. That section "must be construed liberally so as to uphold legislation all parts of which are reasonably germane, and a provision which is auxiliary to and promotive of the main purpose of the act or has a necessary and natural connection with that purpose is germane within this rule." (*Metropolitan Water Dist.* v. *Marquardt* (1963) 59 Cal.2d 159, 172-173 [28 Cal.Rptr. 724, 379 P.2d 28].)

[16]Among the Vehicle Code sections requested to be read were section 21711 (towed vehicles swerving), section 22350 (basic speed law), section 24002 (vehicle not equipped or unsafe), section 29003 (safety chain), and section 41104 (train of vehicles).

445, 448 [85 P.2d 447]; *Meek* v. *Fowler* (1935) 3 Cal.2d 420, 425 [45 P.2d 194], and cases and authorities there cited). We recognize of course that such failure may do so when combined with other circumstances indicating that a violation occurred with knowledge that serious injury would probably result or with a wanton and reckless disregard of the possible results. (*Porter* v. *Hofman, supra; Meek* v. *Fowler, supra,* at p. 426.) ■ A mere reading of the Vehicle Code sections, as plaintiffs requested, would have been seriously misleading to the jury, for they might well have inferred therefrom that mere violation of such sections constituted willful misconduct. It was the responsibility of plaintiffs to offer proper qualifying instructions, and in light of their failure to do so, the court properly refused to read the Vehicle Code sections as requested by them. (See *Downing* v. *Barrett Mobile Home Transport, Inc.* (1974) 38 Cal.App.3d 519, 523 [113 Cal.Rptr. 277], and cases and authorities there cited.)

The judgment is affirmed.

Wright, C. J., McComb, J., Clark, J., and Richardson, J., concurred.

**TOBRINER, J.**—I dissent.

The statute challenged in the instant case is a most peculiar law. From the wide range of automobile accident victims, the statute singles out one very narrow class—automobile passengers who happen to own the car in which they are injured—and bars this, and only this, class of victims from obtaining recovery from drivers who negligently cause their injuries. As I shall explain, this unusual law, which, to my knowledge, has no counterpart in any other jurisdiction in the country, originated as an addition to California's automobile guest statute in response to conflicting judicial decisions on whether an "owner-passenger" was a "guest" within the meaning of the guest statute; in that context, the purpose of the statute was somewhat understandable, treating injured owner-passengers in the same manner as the bulk of nonowner-passengers injured during a "social" ride. In *Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], however, this court held the basic automobile guest statute unconstitutional as a denial of the equal protection of the laws; in light of the demise of the underlying guest statute, the instant provision can no longer claim the justification of according injured owner-passengers the same treatment as most injured social guests. In terms of its original purpose, therefore, the statute's application has become entirely anamolous and irrational.

The majority, ignoring the obvious objective of the statute as demonstrated by its legislative history, seek to sustain the provision without reference to its relationship to the recently invalidated guest statute. As I shall explain, however, none of the hypothetical legislative purposes proffered by the majority rationally justifies a classification scheme which strips only the narrow class of "injured owner-passengers" of protection from the negligence of an automobile driver; moreover, the suggested purposes relied upon by the majority simply cannot plausibly be ascribed to the Legislature. Under these circumstances, the majority's analysis is inadequate to sustain the provision's constitutionality.

Finally, the majority suggest at one point that the challenged statute represents an attempt at legislative "reform" in the automobile liability field. (*Ante,* pp. 520-521.) As discussed below, I do not believe that it can reasonably be maintained that the Legislature intended to "reform" automobile accident law by depriving injured owner-passengers, and only injured owner-passengers, of a negligence cause of action. Furthermore, if legislative reform is to be made in the automobile accident field, as I believe it should, our Constitution demands that such reform be achieved in a manner which does not "irrationally single out one class of individuals for discriminatory treatment." (*Brown* v. *Merlo, supra,* 8 Cal.3d at p. 882.) With all respect to the majority opinion, I believe the challenged statute exhibits just such an unconstitutional vice.

Before beginning my discussion of the challenged statutory provision, I believe that, in light of one footnote in the majority opinion (*ante,* pp. 518-519, fn. 2), I should explain what I see as the proper mode of equal protection analysis in a case such as this. I agree completely with the majority that in this case the appropriate equal protection standard of review is the traditional "restrained" review, with the judiciary affording the challenged legislation a presumption of constitutionality and placing a heavy burden of persuasion on the party attacking the statutory provision.

Over the years, both this court and the United States Supreme Court have utilized various formulations in describing the test to be applied in such cases, sometimes requiring the plaintiff to show that the challenged classification scheme does not "bear some rational relationship to a conceivable legitimate state purpose," (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784 [87 Cal.Rptr. 839, 471 P.2d 487]), at other times indicating that to be valid, "[a] classification 'must be reasonable, not arbitrary, and must rest upon some grounds of difference having a fair and substantial relation to the object of the legislation, so that all persons

similarly circumstanced shall be treated alike.' " (*Reed* v. *Reed* (1971) 404 U.S. 71, 76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251]; *Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 447 [31 L.Ed.2d 349, 358, 92 S.Ct. 1029]; *Royster Guano Co.* v. *Virginia* (1920) 253 U.S. 412, 415 [64 L.Ed. 989, 990, 40 S.Ct. 560]; *Brown* v. *Merlo, supra,* 8 Cal.3d 855, 861.) Indeed, even a cursory review of past equal protection decisions reveals the very great variety in terminology through which the "restrained" equal protection standard has been articulated.[1]

Although the majority choose to single out one of these alternative formulations as the "appropriate" test,[2] I believe all of the various formulations, however phrased, reflect a similar conception of the

---

[1]See, e.g., *Rinaldi* v. *Yeager* (1966) 384 U.S. 305, 309 [16 L.Ed.2d 577, 580, 86 S.Ct. 1497] ("the distinctions that are drawn [must] have 'some relevance to the purpose for which the classification is made' "); *McGowan* v. *Maryland* (1961) 366 U.S. 420, 425 [6 L.Ed.2d 393, 399, 81 S.Ct. 1101] ("The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective"); *Morey* v. *Doud* (1957) 354 U.S. 457, 465 [1 L.Ed.2d 1485, 1491, 77 S.Ct. 1344] ("a statutory discrimination must be based on differences that are reasonably related to the purpose of the Act in which it is found"); *Railway Express* v. *New York* (1949) 336 U.S. 106, 115 [93 L.Ed. 533, 541, 69 S.Ct. 463] (Jackson, J. concurring) ("differentiation must have an appropriate relation to the object of the legislation"); *Lindsley* v. *National Carbonic Gas Co.* (1911) 220 U.S. 61, 78 [55 L.Ed. 369, 377, 31 S.Ct. 337] ("The equal protection clause . . . [invalidates a classification] only when it is without any reasonable basis and therefore is purely arbitrary. . . . A classification having some reasonable basis does not offend that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality"); *Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 131 [216 P.2d 825, 13 A.L.R.2d 252] ("A classification is reasonable . . . only if there are differences between the classes and the differences are reasonably related to the purposes of the statute").

[2]The majority emphasize that the formulation the opinion quotes was utilized by our court in the recent decision of *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16 [112 Cal.Rptr. 786, 520 P.2d 10]. In *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726 [114 Cal.Rptr. 460, 523 P.2d 260], decided three months after the *D'Amico* decision, however, our court utilized two alternative formulations of the "restrained" equal protection test: one, the "fair and substantial relation to the object of the legislation" formula, initially articulated by the United States Supreme Court in *Royster Guano Co., supra,* and quoted in *Brown* v. *Merlo, supra,* and, two, a formulation from an earlier California appellate decision, which states: "It is . . . well settled that a statute makes an improper and unlawful discrimination if it confers particular privileges upon a class arbitrarily selected from a larger number of persons all of whom stand in the same relation to the privileges granted and between whom and the persons not so favored no reasonable distinction or substantial difference can be found justifying the inclusion of the one and the exclusion of the other." (11 Cal.3d at p. 734.)

My point, of course, is not that the *Cossack* formulations are the only "correct" standards because that decision is more recent than *D'Amico*. Rather, I simply note that in recent, as in past, years, different formulations of the "restrained" equal protection standard have been continually utilized in an attempt to describe the applicable equal protection test. No one formula can be isolated as the *only* appropriate test.

principle embodied in the equal protection clause, a principle that holds simply that, to be constitutional, statutory classifications must be reasonable rather than arbitrary. The determination of whether a particular statutory classification is "arbitrary" or "reasonable" cannot, of course, be made in the abstract; in this context, "arbitrariness" or "reasonableness" only have meaning in terms of a classification's relation or nonrelation to the purpose or purposes of the legislation embodying the classification. All of the varying formulations that have been used by the courts recognize the need to evaluate a classification on the basis of whether it is "reasonably," "rationally," or "fairly" related to a legitimate legislative purpose.

Although it is sometimes suggested that the differing equal protection formulations establish different guides for determining the "legislative purpose" against which a classification scheme is to be measured, the apparent linguistic differences are more superficial than real; the cases which utilize the "conceivable legislative purpose" language adopted by the majority, like the cases which incorporate different terminology, refer to a legislative purpose which, though not necessarily articulated in the legislation itself or even in the legislative history, is at least a realistic, plausible purpose which the Legislature may have intended to pursue. (See Note, *Developments in the Law—Equal Protection* (1969) 82 Harv.L.Rev. 1065, 1078.) Courts do not uphold classification schemes on the basis of a theoretically "conceivable" purpose which may be imagined by a court to justify a particular classification, but which, under all the circumstances, cannot plausibly or realistically be attributed to the Legislature.

The case of *Weinberger* v. *Weisenfeld* (1975) 420 U.S. 636 [43 L.Ed.2d 514, 95 S.Ct. 1225], decided by the United States Supreme Court only last year, clearly demonstrates this point. In *Weisenfeld,* a young widower challenged the constitutionality of a provision of the Social Security Act which provided benefits to a widow who stayed at home to care for a small child upon the death of her wage earning husband, but denied similar benefits to a widower who provided the same fulltime child care after the death of his wage earning wife. The government attempted to justify the distinction as one "reasonably designed to compensate women beneficiaries as a group for the economic difficulties which still confront women who seek to support themselves and their families." (420 U.S. at p. 648 [43 L.Ed.2d at p. 524]; cf. *Kahn* v. *Shevin* (1974) 416 U.S. 351, 355 [40 L.Ed.2d 189, 193, 94 S.Ct. 1734].)

After reviewing the legislative history of the challenged provision, however, the *Weisenfeld* court concluded "that Congress' purpose in providing benefits to young widows with children was not to provide an income to women who were, because of economic discrimination, unable to provide for themselves. Rather . . . [the statute] was intended to permit women to elect not to work and to devote themselves to the care of children." (420 U.S. at p. 648 [43 L.Ed.2d at p. 525].) Consequently, the court refused to measure the classification's rationality against the theoretically conceivable, but unrealistic, purpose suggested by the government and struck down the widow-widower classification scheme as unrelated to the statute's purpose of promoting parental child care.[3]

In reaching its conclusion, the *Weisenfeld* court explicitly emphasized: "This Court need not in equal protection cases accept at face value assertions of legislative purposes, when an examination of the legislative scheme and its history demonstrates that the asserted purpose could not have been a goal of the legislation." (420 U.S. at p. 648, fn. 16 [43 L.Ed.2d at p. 525].) This is clearly the appropriate judicial approach, for equal protection principles would become meaningless and ineffectual if courts simply engaged in the fantasy of conjuring up a "conceivable," but entirely unrealistic, purpose that will sustain a statutory classification. In no other area is constitutional adjudication carried on in such highly fictional terms; the application of the equal protection clause demands an equally realistic approach.

When viewed from such a realistic perspective, the purpose of the statutory provision challenged in the instant case becomes relatively clear. The statutory clause at issue, barring an injured owner-passenger from suing the driver of his car to recover for injuries sustained by virtue of the driver's negligence, was enacted in 1961 as an explicit amendment

---

[3]It is worthy of some note that *Weisenfeld* was a unanimous decision. Justice Rehnquist, in a special concurrence, explicitly joined the majority ruling, observing that "the Court's opinion establishes that the Government's proffered legislative purpose is so totally at odds with the context and history of [the challenged statute] that it cannot serve as a basis for judging whether the statutory distinction between men and women rationally serves a valid legislative objective." (420 U.S. at p. 655 [43 L.Ed.2d at p. 529].)

In several other recent equal protection cases, the Supreme Court has similarly rejected a "theoretically conceivable" purpose that, under all the circumstances, could not reasonably be attributed to the Legislature. (See, e.g., *Jimenez* v. *Weinberger* (1974) 417 U.S. 628, 634 [41 L.Ed.2d 363, 369, 94 S.Ct. 2496]; *U.S. Dept. of Agriculture* v. *Moreno* (1973) 413 U.S. 528, 536-537 [37 L.Ed.2d 782, 789-790, 93 S.Ct. 2821]; *Eisenstadt* v. *Baird, supra,* 405 U.S. 438, 448-449 [31 L.Ed.2d 349, 359-360]; cf. *McGinnis* v. *Royster* (1973) 410 U.S. 263, 275-277 [35 L.Ed.2d 282, 291-293, 93 S.Ct. 1055].)

to the then existing automobile guest statute.[4] (Stats. 1961, ch. 1600, § 1, p. 3429.) A few years prior to the 1961 enactment, the question of whether an "owner-passenger" was a "guest" within the meaning of the automobile guest statute, and hence precluded from recovering for injuries caused by the negligence of the automobile driver, had arisen in California for the first time; under the original guest statute, a "guest" was defined as a passenger who had not given "compensation" for the ride.

In *Ray* v. *Hanisch* (1957) 147 Cal.App.2d 742, 747-751 [306 P.2d 30], the Court of Appeal held that although "the mere fact plaintiff was riding in her own car while it was driven by defendant, her friend, does not classify her as a guest," the social arrangement between the parties in that case demonstrated, as a matter of law, that the owner had not given "compensation" for the ride; consequently, the court held that the owner-passenger *was* a "guest" and could not recover. In *Ahlgren* v. *Ahlgren* (1960) 185 Cal.App.2d 216 [8 Cal.Rptr. 218], however, on facts closely analogous to the *Ray* case, the Court of Appeal concluded that an injured owner-passenger was *not* a "guest" under the guest statute, apparently reasoning that in permitting the driver to use his car, the owner had given "compensation" within the meaning of the act. (See also *Ahlgren* v. *Ahlgren* (1957) 152 Cal.App.2d 723, 725 [313 P.2d 88].)

The confusion illustrated by the *Ray* and *Ahlgren* cases was not unique to the California scene. Courts in other states had reached varying conclusions on this very issue (see Annot. (1959) 65 A.L.R.2d 312; Note (1957) 4 U.C.L.A.L.Rev. 652; Note (1958) 32 So.Cal.L.Rev. 93) and Dean Prosser had pointedly observed that among the guest statute's "knotty little problems involving petty and otherwise entirely inconsequential points of law" was the question: "Can the owner of the car be a guest in it when someone else is driving?" (Prosser, The Law of Torts (4th ed. 1971) § 34, p. 187.)

To eliminate this confusion, the Legislature in 1961 enacted the provision at issue in this case, establishing that a passenger-owner was to

---

[4]Vehicle Code section 17158, as amended in 1961, read in full: "*No person riding in or occupying a vehicle owned by him and driven by another person with his permission and* no person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the *owner or guest during the ride,* unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver." The emphasized language was added by the 1961 amendment.

be treated in a similar manner as an automobile "guest," whether or not the owner's conduct could be construed as providing "compensation" for the ride. (See *Review of Selected 1960-1961 California Legislation* (1961) 36 State Bar J. 858.)

The 1961 "owner-passenger" amendment to the automobile guest statute came before this court for the first time in *Patton* v. *La Bree* (1963) 60 Cal.2d 606 [35 Cal.Rptr. 622, 387 P.2d 398]. In *Patton* the plaintiff, a car owner who had taken her car to an automobile dealer to be serviced, was injured while riding as a passenger; the accident occurred while one of the car dealer's employees was driving. Plaintiff claimed initially that because she had paid for the servicing of her car she had given "compensation" for the ride; she then argued that insofar as the amended guest statute distinguished between nonowner-passengers who had given compensation and owner-passengers who had given compensation, allowing recovery by the former but barring recovery by the latter, the statute's classification scheme was invalid under the equal protection clause.

Our court rejected that equal protection claim, but the scope of the *Patton* holding is much narrower than the majority opinion in the instant case suggests. As explained above, the statute before the court in *Patton* accorded all injured owner-passengers the same treatment as most injured social passengers. While the Legislature had concluded that the giving of compensation represented a real distinction in the "guest" context, and justified differential treatment between those passengers who had paid for the ride and those who had not, the Legislature had apparently concluded that in the context of an "owner-passenger" the concept of giving "compensation" had little meaning; as noted earlier, in some sense every owner-passenger provides some "compensation" (e.g., the rental value of the car) for the ride. (See, e.g., *Lorch* v. *Eglin* (1952) 369 Pa. 314 [85 A.2d 841, 843]; *Parker* v. *Leavitt* (1960) 201 Va. 919 [114 S.E.2d 732, 737].) Thus, rather than having the application of the guest statute turn on the spurious notion of "compensation" when an owner-passenger was involved, the Legislature provided that all owner-passengers were to be accorded the same treatment as the majority of social guests. Our holding in *Patton* did no more than uphold such a legislative decision as reasonable.

Contrary to the assertion of the majority, the constitutional issue before our court in the instant case is totally different from the question presented in *Patton*. At the time *Patton* was decided, the statutory

provision denying an owner-passenger recovery for a driver's negligence simply operated to place injured owner-passengers on a par with most injured social guests; in the instant case, by contrast, the challenged provision inflicts a burden on injured owner-passengers borne by *no other class* of automobile accident victims. The difference in circumstances, of course, is attributable to this court's intervening decision in *Brown* v. *Merlo, supra,* 8 Cal.3d 855, in which we held that in denying recovery to nonpaying "guests" the basic statute violated the equal protection of the laws.

In light of the demise of the automobile guest statute in *Brown* v. *Merlo,* it is clear that the disparate treatment accorded owner-passengers by the challenged provision bears no rational relation to the original legislative purpose. As we have seen, the provision at issue was enacted in order to treat owner-passengers as "guests" under the guest statute; now that automobile guests are no longer denied recovery for injuries suffered at the hands of a negligent driver, the instant classification clearly does not further the legislative purpose of according owner-passengers the same treatment as such guests, but rather defeats that purpose by singling out owner-passengers for differential treatment from all other automobile accident victims.

Moreover, the present statutory classification scheme cannot be justified by reference to the two legislative purposes, protecting hospitality and combating collusive lawsuits, that had been proffered in support of the basic guest statute. In *Brown* v. *Merlo* we explained that the hospitality argument did not support the differential treatment of automobile guests, as distinguished from other varieties of guests, and also ignored the general prevalence of liability insurance. (8 Cal.3d at pp. 864-872.) We further explained that the interest in eliminating collusion could not rationally justify the wholesale preclusion of numerous bona fide claims. (*Id.,* at pp. 872-878.)

In light of our conclusions in *Brown* v. *Merlo,* it is clear that these same rationales cannot sustain the owner rule at issue here. In the first place, the preclusion of negligence actions by owners certainly does not rationally further any state interest in promoting hospitality, for unlike the basic guest statute, the owner provision deprives the *host* of his negligence claim, and not the guest. (See *Ahlgren* v. *Ahlgren, supra,* 185 Cal.App.2d 216, 223-225; *Peterson* v. *Winn* (1962) 84 Idaho 523 [373 P.2d 925, 928]; Note, *Problems of Recovery under the Iowa Guest Statute* (1962) 47 Iowa L.Rev. 1049, 1056.) Moreover, even if we assume that in

some instances it is the "guest" driver who is the more "hospitable" party, as we explained in *Brown* v. *Merlo,* in light of the prevalence of automobile liability insurance "it is the insurance company, and not the [defendant driver] that in the majority of instances wins protection under [the challenged statute.]" (8 Cal.3d at p. 868.)

Second, the legislative objective in preventing collusive litigation can no more justify a rule precluding all actions by owner-passengers than it could a rule eliminating all actions by automobile guests. As we noted in *Brown* v. *Merlo,* "[i]nstead of confining its disability to those who actually institute collusive suits, the provision reaches out beyond such persons and burdens the great number of honest automobile [owners]. . . . Although the [equal protection clause does] not require absolute precision in the designation of classifications, [it does] not tolerate classifications which are so grossly overinclusive as to defy notions of fairness or reasonableness. . . . [I]n barring suits by all automobile [owners] simply to protect insurance companies from some collusive lawsuits, the . . . statute exceeds the bounds of rationality and constitutes a denial of equal protection." (8 Cal.3d at p. 877; see also *Jiminez* v. *Weinberger, supra,* 417 U.S. 628, 636-637 [41 L.Ed.2d 363, 370-371]; *U.S. Dept. of Agriculture* v. *Moreno, supra,* 413 U.S. 528, 537-538 [37 L.Ed.2d 782, 789-790]; *Gomez* v. *Perez* (1973) 409 U.S. 535, 538 [35 L.Ed.2d 56, 59-60, 93 S.Ct. 872]; *Glona* v. *American Guarantee Co.* (1968) 391 U.S. 73, 76 [20 L.Ed.2d 441, 444, 88 S.Ct. 1515].)

Although the provision at issue was enacted as an integral part of this state's automobile guest statute, the majority do not suggest that the challenged classification scheme bears a rational relation to any legislative purpose related to the guest statute. Instead, the majority opinion appears to suggest that because the provision was reenacted in 1973, after our decision in *Brown* v. *Merlo* had invalidated the basic guest statute, the challenged provision was necessarily intended to serve a purpose unrelated to the former guest statute. The instant case, of course, arose under the pre-1973 statute (see *ante,* p. 516) and thus it is not at all clear what weight, if any, the 1973 reenactment should be given in the instant case. Assuming, however, that the 1973 legislative action is relevant to our present inquiry, I cannot agree with the majority that the provision, either in its pre- or post-1973 form, passes constitutional muster.

To begin with, in terms of political realities, I believe that the majority place far too much significance on the "reenactment" of the challenged provision in 1973. Inasmuch as our decision in *Brown* v. *Merlo, supra,*

had specifically declined to pass upon the constitutionality of the owner provision of the former guest statute because that portion of the statute was not at issue in that case (see 8 Cal.3d at p. 862, fn. 3), the 1973 "reenactment" may simply reflect a legislative decision to leave the question of the continued validity of the owner-passenger provision to the courts. If that is the case, it is clear that, under the reasoning discussed above, the provision is invalid.

Assuming, however, as do the majority, that in reenacting the provision the Legislature intended to promote some legitimate purpose independent of the original guest statute, it is still necessary to identify a reasonably conceivable legislative purpose which rationally justifies the disparate treatment provided by the provision's classification scheme. That classification scheme, once again, singles out those injured automobile passengers who happen to own the car in which they are injured and bars such injured passengers, and only such passengers, from recovering damages for injuries negligently caused by the driver of the vehicle. The peculiar nature of this classification scheme brings to mind the United States Supreme Court's admonition in *Morey* v. *Doud* (1957) 354 U.S. 457, 464 [1 L.Ed.2d 1485, 1490-1491, 77 S.Ct. 1344], that: " 'Discriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the [equal protection] provision.' [Citations.]"

The majority initially suggest that the challenged provision may be justified on the ground that an owner-passenger has the "right" to direct and control the driver while a nonowner-passenger does not have such right. The opinion, however, never explains the significance, in this context, of the owner's ostensible "legal right." The majority virtually concede that the distinction cannot rest on any significant difference in the *ability* of an owner, as compared to a nonowner, to prevent automobile accidents. It is common knowledge, of course, that as a result of the speed at which cars now travel and the congestion of streets and freeways, most traffic accidents develop almost instantaneously, leaving any owner-passenger little opportunity to intercede. Moreover, as for those few occasions when he has surrendered the wheel, the owner, to revert to a cliche, is no longer "in the driver's seat" and physical intercession in all likelihood would increase rather than reduce the probability of mishap. Finally, and most importantly, the likelihood and effectiveness of physical intercession as well as verbal assistance such as the sounding of a warning are, of course, functions of a passenger's presence in the car, not his title to the car.

The majority claim, however, that it is not the owner's superior *"ability"* to exercise effective control that makes differential treatment rational, but rather it is the owner's *"standing* to seek recovery for injuries" that makes the difference. (*Ante,* at pp. 519-520) With all respect, I find this resort to notions of "standing" less than illuminating.[5] From what I can gather from the majority's further explanation, the suggestion seems to be that since an owner could not recover for injuries which he negligently inflicted on himself if he were driving, the Legislature may have concluded that he should not recover for injuries which someone driving his car with his permission negligently inflicts upon him.

This suggested "legislative purpose" is simply a non sequitur. The fact that an individual cannot recover damages when he negligently injures himself does not rationally explain why that individual should not be able to recover damages when another person negligently injures him. Under general tort principles, although a principal is vicariously liable for injuries which his agent negligently inflicts on third parties (see Civ. Code, § 2338), it is the negligent agent who bears the primary liability (see *Bradley* v. *Rosenthal* (1908) 154 Cal. 420, 423 [97 P. 875]), and a principal has always been able to recover for injuries which he sustains as a result of his agent's negligence. (See, e.g., *Dahl-Beck Electric Co.* v. *Rogge* (1969) 275 Cal.App.2d 893, 906 [80 Cal.Rptr. 440]. See generally Seavey, Law of Agency (1964) § 155, p. 253.)

The Legislature has explicitly incorporated these principles into the automobile liability area. Thus, whereas Vehicle Code section 17150 provides that an automobile owner is liable for injuries to third parties resulting from a permissive driver's negligent operation of the owner's vehicle, section 17152 explicitly declares that it is the negligent operator or driver who is primarily liable and "recourse shall first be had against the property of the operator"; moreover, section 17153 specifically provides that "[i]f there is recovery . . . under this chapter against an owner . . ., the owner . . . is subrogated to all the rights of the person

---

[5]It seems relatively clear that the majority cannot be referring to the traditional legal concept of "standing." The statute at issue here directly burdens those who sue on behalf of an injured owner-passenger; plaintiffs fall precisely within the burdened class and thus clearly have "standing" to raise the present issue. Moreover, the statute in question is clearly not simply a procedural measure, designed to deal with issues of "justiciability" and the like; automobile accident litigation, of course, is perhaps the plainest example of a traditional justiciable controversy. Thus, the majority's reference to the "standing" concept is at best obscure.

injured . . . and may recover from the operator the total amount of any judgment and costs. . . ."[6]

These provisions establish beyond dispute that in California the general legislative policy is one which holds the negligent driver primarily responsible for injuries he causes. In light of these provisions, it is patently unrealistic to suggest, as the majority do, that the purpose of the challenged provision was to "attribute" or "impute" the driver's negligence to the owner so as to bar any recovery by the owner against the negligent driver.

Of course, to the extent that an owner's own negligence—in entrusting his car to an incompetent, intoxicated or known careless driver, for example—is a proximate cause of his own injury, the owner's right to recover would be diminished under governing common law principles. (See *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226].) The instant statute, however, cannot even be explained as a legislative codification of the now displaced contributory negligence rule, because under the classifications drawn by the present statute even the most careful owner, who selected only the most cautious driver and scrupulously supervised the driving, would be barred from recovery if the driver negligently causes an accident. If the Legislature had intended the provision to encourage owners to use due care in selecting those to whom they entrust their vehicle, the statute would necessarily have distinguished between those owners who did and those who did not use such care. Accordingly, the statute cannot be justified with reference to an owner's "right" to control the driver.

In addition to relying on the owner's legal right to control and direct the driver, the majority suggest that the classification scheme is rational because the Legislature might have felt it was "unfair" to permit the owner to recover "*at the expense of the driver.*" (Original italics.) (*Ante,*

---

[6]Section 17152 provides in full: "In any action against an owner, bailee of an owner, or personal representative of a decedent on account of liability imposed by Sections 17150, 17154, or 17159 for the negligent or wrongful act or omission of the operator of a vehicle, the operator shall be made a party defendant if service of process can be made in a manner sufficient to secure personal jurisdiction over the operator. Upon recovery of judgment, recourse shall first be had against the property of the operator so served."

Section 17153 provides in full: "If there is recovery under this chapter against an owner, bailee of an owner, or personal representative of a decedent, the owner, bailee of an owner, or personal representative of a decedent is subrogated to all the rights of the person injured or whose property has been injured and may recover from the operator the total amount of any judgment and costs recovered against the owner, bailee of an owner, or personal representative of a decedent."

p. 522.) To support this thesis, the majority point to section 11580.1 of the Insurance Code, which permits automobile liability policies to exclude coverage for injuries sustained by "an insured" (i.e., the owner of the car). The majority reason that if the owner's policy does not cover the accident, the injured owner can only recover from the driver or the driver's insurer.

Even assuming that the majority of outstanding insurance policies issued to owners contain valid clauses excluding coverage of injuries to such owners (cf. *State Farm Mut. Auto. Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193 [110 Cal.Rptr. 1, 514 P.2d 953]), the majority's theory does not explain on what basis the Legislature could rationally decide that it was "unfair" to permit an owner to recover against a negligent driver. It is the basic policy in this state, of course, that every person is responsible for the consequences of his negligent acts (Civ. Code, § 1714) and California statutory law explicitly provides that all automobile *drivers,* as well as automobile *owners,* are required to obtain adequate insurance coverage. (See Veh. Code, § 16020.)[7] In light of the longstanding California policy of seeking to encourage automobile drivers to carry liability insurance (see Note, *Financial Responsibility Laws in Constitutional Perspective* (1973) 61 Cal.L.Rev. 1072, 1076-1078), it cannot realistically or plausibly be maintained that the Legislature enacted or reenacted section 17158 to protect those drivers who choose *not* to obtain their own insurance, and, in particular, to afford that protection at the expense of the very victims whom such uninsured drivers negligently injure. The majority point to nothing in the legislative history which even remotely supports such a fanciful and speculative theory.

To reiterate, the statutory classification scheme at issue here is a total anomaly. Enacted to provide injured owner-passengers with the same treatment accorded injured social guests, the statute now operates to deny owner-passengers the legal rights enjoyed by every other class of automobile accident victims. As I have explained, the deprivation of a negligence cause of action to this narrow class of automobile victims is not rationally related to any reasonably conceivable legislative purpose. For this reason, the classification scheme is violative of the state and federal equal protection guarantees and cannot stand.

---

[7]Section 16020 provides in full: "*Every driver of,* and owner of, a motor vehicle shall, at all times, maintain in force one of the forms of financial responsibility specified in Section 16021." (Italics added.)

Accordingly, I would reverse the judgment of nonsuit with respect to plaintiff's negligence claim.

Mosk, J., concurred.