In re PARIS AIR CRASH OF
MARCH 3, 1974.

No. MDL 172.

United States District Court,
C. D. California.

Feb. 10, 1977.

See also, D.C., 410 F.Supp. 326.

F. Lee Bailey, Aaron J. Broder, by Seymour Madow, New York City, Butler, Jefferson, Fry & Dan, by James G. Butler, James M. Jefferson, Jr., Robert P. Fry, Michael A. K. Dan, Moses A. Lebovits, Los Angeles Cal., Krutch, Lindell, Donnelly, Dempcy, Lageschulte & Judkins, P.S. by Richard F. Krutch, Vernon T. Judkins, Seattle, Wash., Lewis, Wilson, Cowles, Lewis & Jones, Ltd. by Richard H. Jones, Arlington, Va., McGrail & Nordlund by Joseph V. McGrail, Alexandria, Va., Magana, Cathcart & McCarthy by Daniel C. Cathcart, James J. McCarthy, Los Angeles, Cal., Morgan, Wenzel & McNicholas by Wm. Marshall Morgan, Los Angeles, Cal., Chase, Rotchford, Drukker & Bogust by Henry J. Bogust, Los Angeles, Cal., Goldfarb & Singer, Washington, D.C., Green, Royce & Seaman by Irving H. Green, Beverly Hills, Cal., Hodge & Hodges by John R. Skoog, Los Angeles, Cal., Horgan & Robinson by Mark P. Robinson, Los Angeles, Cal., Kreindler & Kreindler by Lee S. Kreindler, Marc S. Moller, Melvin I. Friedman, New York City, David H. Noble, Los Angeles, Cal., Paul, Weiss, Rifkind, Wharton & Garrison by Joseph S. Iseman, John J. O'Neil, New York City, Shahin & Wawro by James Wawro, Los Angeles, Cal., Sherman & Schwartz by Arthur Sherman, Beverly Hills, Cal., Speiser & Krause by Stuart M. Speiser, Charles F. Krause, New York City, Speiser, Krause & Madole by Donald W. Madole, A. George Glasco, Juanita M. Madole, Washington, D.C., Walkup,

Downing & Sterns by Gerald C. Sterns, Thomas G. Smith, San Francisco, Cal., Walsh & Levine by Laurence W. Levine, New York City, for plaintiffs.

Kirtland & Packard by Robert C. Packard, Jacques Soiret, Los Angeles, Cal., Mendes & Mount by James M. FitzSimons, Joseph Asselta, New York City, Tuttle & Taylor by William A. Norris, Joseph R. Austin, Charles Rosenberg, Ronald C. Peterson, Los Angeles, Cal., Belcher, Henzie & Biegenzahn by Leo J. Biegenzahn, Los Angeles, Cal., for McDonnell Douglas.

Adams, Duque & Hazeltine by Thomas F. Call, Los Angeles, Cal., Condon & Forsyth by George N. Tompkins, Jr., Desmond T. Barry, Jr., Frank A. Silane, New York City, Latham & Watkins by Philip F. Belleville, A. Victor Antola, Thomas L. Harnsberger, Los Angeles, Cal., Shaw, Pittman, Potts & Trowbridge by Phillip D. Bostwick, Jay H. Bernstein, Washington, D.C., for Turkish Airlines, Inc.

Overton Lyman & Prince by Fred S. Lack, Jr., Brenton F. Goodrich, Gregory A. Long, Ernest E. Johnson, Los Angeles, Cal., for General Dynamics.

William D. Keller, U.S. Atty., by James R. Dooley, Asst. U.S. Atty., Los Angeles, Cal., George E. Farrell, John G. Laughlin, Special Atty., Herbert L. Lyons, Special Atty., Tort Claims Section, Aviation Unit, Civ. Div., Dept. of Justice, Washington, D.C., Neil R. Eisner, Federal Aviation Administration, Washington, D.C., for the United States.

Before HALL and REAL, District Judges.

Defendants have renewed their motion to dismiss the claims of plaintiffs for punitive damages for the alleged wrongful death of relatives arising out of the Paris Air Crash of March 3, 1974. Defendants have also renewed their motion for summary judgment on the same issue.[1]

---

1. These renewed motions are brought after having been denied by the Hon. Peirson M. Hall. The changed posture of the litigation in six respects is the reason for presently making a decision on the renewed motions. The respects are, viz.:

(a) All claimants in the deaths of the 346 decedents involved in the MDL–172 litigation

The Court by the Honorable Peirson M. Hall has previously decided that California law shall control the processing and trial of these cases. The re-affirmation of that decision requires that the Court now renew consideration of the questions raised by defendants' motions and plaintiffs' contention thereto that the law of California upon punitive damages in wrongful death cases is 1. wrongly decided by California courts and 2. the interpretation of the California statutes by the courts of California compels an application which is violative of the United States and California constitutional provisions requiring equal protection of the laws.

■ These cases[2] invoke the diversity

(except those listed in n.2) have arrived at an agreed settlement figure as to each decedent for compensatory damages *only upon waiver of all claims for punitive damages by the plaintiffs in each case.*

(b) The remaining claimants in the cases in n.2 hereof continue to refuse to waive punitive damages, which has prevented, and will continue to prevent, any disposition of compensatory damages until the occurrence which is set forth in (d) hereof.

(c) The parties have completed a pre-trial order (542 pages) for the trial of punitive damages in the n.2 cases. Thus, both compensatory and punitive damages would remain unresolved by final judgment until after a long *nisi prius* trial and subsequent appeal process on punitive damages, which would add several years to the three already passed since the crash.

(d) The parties in all cases set forth in n.2 have entered into a stipulation which permits the disposition by trial or settlement of all claims in the n.2 cases for *compensatory damages without waiver of punitive damages*; so that with an expedited appeal under 28 U.S.C. § 1292(b), the compensatory damages can be tried or settled as to each decedent *while the appeal process is going on.*

(e) The action under 28 U.S.C. § 1407 of the Judicial Panel on Multidistrict Litigation in changing the assignment of MDL–172 by the following order, viz.:

"BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION IN RE AIR CRASH DISASTER AT PARIS, FRANCE, ON MARCH 3, 1974

"ORDER ASSIGNING TRANSFEREE

"At the request of Judge Peirson M. Hall, the transferee judge in this litigation, and with the consent of the transferee court, it is hereby ordered that this litigation is assigned to Judge Manuel L. Real in the Central District of California along with the previously-assigned Judge Peirson M. Hall. Each transferee judge shall have total jurisdiction over the coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 in this litigation and each judge may act individually and/or jointly with respect to those proceedings.

"FOR THE PANEL:
/s/ John Minor Wisdom
John Minor Wisdom
Chairman"

(f) The plaintiffs in the n.2 cases have waived all rights to recover for property or pain and suffering of the decedents before death, either of which, if proved, under Cal.Probate Code § 573 would have supported a claim for punitive damages.

2. Jurisdiction is also invoked under other federal statutes, but even so 28 U.S.C. § 1652 applies and requires the application of state laws inasmuch as no "Acts of Congress otherwise require," except that this Court cannot shift to the state court its responsibility to interpret and apply the United States Constitution when required in the litigation filed pursuant to its diversity jurisdiction. The unsettled claims upon the death of decedents to which this opinion is addressed are:

| Case | Number | Decedents |
|---|---|---|
| Kalinsky v. McDonnell Douglas, et al. | 74–1689 | 1 decedent |
| Yilmazer et al., v. McDonnell Douglas, et al. | 75–123 | 8 decedents ("Crew") |
| Horiya, et al., v. McDonnell Douglas, et al. | 75–517 | 46 decedents |
| Martin, et al., v. McDonnell Douglas, et al. | 75–518 | 45 decedents |
| same decedents | | (Japanese) |
| Martin v. Turk Hava Yollari, et al. | 75–524 | 1 decedent |
| Roberts v. McDonnell Douglas, et al. | 75–525 | 1 decedent |
| same decedent | | |
| Saxton v. McDonnell Douglas, et al. | 75–688 | 2 decedents |
| Sy v. McDonnell Douglas, et al. | 75–2750 | 1 decedent |

jurisdiction (among other grounds) of this Court and consonant with the doctrine expressed in *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) this Court must apply the law of the State of California as interpreted in the appellate decisions of that state's appellate courts. In other words, in applying state law this Court sits as a state trial court bound by the same appellate authority as a state trial judge. Disagreeing with the interpretation of state appellate courts in *Lange v. Schoettler,* 115 Cal. 388, 47 P. 139 (1896); *Fox v. Oakland Con. St. Ry.,* 118 Cal. 55, 50 P. 25 (1897); *Doak v. Superior Court,* 257 Cal.App.2d 825, 65 Cal.Rptr. 193 (1968); *Pease v. Beech Aircraft Corp.,* 38 Cal.App.3d 450, 113 Cal. Rptr. 416 (1974); and *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976) does not permit this Court to rule to the contrary. California appellate courts have held that punitive damages cannot be recovered in wrongful death cases, although allowable in personal injury, libel, property damage and other cases where the tortious conduct is oppressive, fraudulent or malicious.[3]

Defendants argue that the application of these cases ends the controversy. So simplistic a solution to what is threatened as monumental litigation is tempting. But this Court sits as both a state and federal court to decide issues of California and United States constitutional law. In the former, it acts under the compulsion of California authority. As to the latter, it sits unfettered by any compelling authority of California appellate decisions, and acts only under compulsion of Ninth Circuit and United States Supreme Court decisions. Since Lange, Fox, Doak, Pease and Tarasoff (supra) just have not addressed the constitutional attack made by plaintiffs[4] relying on both California and United States constitutional requirements of equal protection, this Court is free to decide the issue from its own consideration of the law. It is in this context that this Court now undertakes to decide the issue of punitive damages raised in this litigation.

The cause of action for wrongful death is found in the language of California Code of Civil Procedure § 377[5] which provides in pertinent part:

§ 377. *Wrongful death of adults or certain minors; parties; right of action; damages; consolidation of actions*

When the death of a person . . . is caused by the wrongful act or neglect of another, his heirs, and his dependent parents, if any, who are not heirs, or personal representatives on their behalf may maintain an action for damages against the person causing the death. . . . In every action under this section, such damages may be given as under all the circumstances of the case, may be just, but shall not include damages recoverable under Section 573 of the Probate Code. . . .

Necessary to a consideration of constitutional infirmity or validity of a particular legislative enactment or its application by the courts is an analysis of what the underlying statutory provision does or does not do.

California Code of Civil Procedure § 377 creates in certain persons (all plaintiffs

---

**3.** Wrongful death is the only tort where, if accompanied by oppression, fraud or malice, punitive damages are not recoverable in California.

**4.** In deference to California courts and the probability of resolution in *Rosendin v. Avco Lycoming Division, et al.* (No. 32999; Cal.Ct. of Appeal, 1st App.Dist.; As modified, filed March 25, 1976), this Court stayed its hand on resolution of the constitutional issues now addressed herein. Unfortunately, the California appellate courts have again failed to address these important issues. This has continued the complete vacuum in the consideration of the constitutional question by the appellate courts of California, compelling this Court to decide both the California and United States constitutional questions.

**5.** Since March 3, 1974, the date of the deaths upon which these actions are brought, C.C.P. § 377 has been re-cast without effect on the claims involved herein.

herein) a right to sue for wrongful death. It provides for "damages . . . as under all the circumstances of the case, may be just . . ." It excludes damages which are otherwise recoverable pursuant to California Probate Code § 573.[6] Neither the inclusion of damages that are just, nor the exclusion of damage recoverable by the estate address themselves to the question of punitive damages. Facially, then, Section 377 shows no constitutional infirmity because it does not address the matter of punitive damages. Punitive damages, except in certain very limited circumstances not pertinent here, are the subject of California Civil Code § 3294. That section provides:

§ 3294. *Exemplary damages; when allowable*

In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

The unequivocal language of Section 3294 is applicable to all torts including wrongful death cases—i. e., "an action for the breach of an obligation not arising from contract . . . ." Plaintiffs do not make a frontal attack on either California Code of Civil Procedure § 377 or California Civil Code § 3294 as unconstitutional. The thrust of plaintiffs' arguments is that application by California courts of C.C.P. § 377 or C.C. § 3294 in a manner which would deny them the right to recover punitive damages violates the equal protection of the law guar-

anteed by the California and United States Constitutions.

Equal protection—its definition and its availability to litigants in a United States constitutional sense is not one of easy resolution. If anything is clear from a distillation of judicial thought on the subject it is that equal protection is at least a two edged sword sharpened or blunted by the concepts of strict scrutiny[7] or rational basis[8] as the measure of constitutional concern for state action. The inquiry here is whether or not there is a rational basis for applying C.C.P. § 377 in such a manner as to deny wrongful death survivors punitive damages.

Punitive damages like class actions have been highly praised and roundly denounced depending upon who is paying the piper. It is not the intent of this Court either to condemn or place its imprimatur on the theory of punitive damages in tort cases. That subject must abide another forum. California has, however, spoken upon the subject in unequivocal language in C.C. § 3294 permitting punitive damages, without limitation in tort cases for the purpose of punishing and deterring tortious conduct. *Coats v. Construction and General Laborer's Local No. 185,* 15 Cal.App.3d 908, 93 Cal.Rptr. 639 (1971); *Fletcher v. Western National Life Insurance Company,* 10 Cal. App.3d 376, 89 Cal.Rptr. 78 (1970).

Defendants argue in support of the constitutionality of the interpretation of C.C.P. § 377 set forth in Lange, Fox, Doak, Pease and Tarasoff (supra) that the exclusion of wrongful death survivors from the unfettered reach of C.C. § 3294 in tort cases is rational for several reasons—1. the danger of excessive recoveries; 2. discouragement of marginal litigation and encouragement

---

**6.** California Probate Code § 573 permits executors and administrators to sue for, among other things, personal injury and property damage suffered by the decedent. Its provisions are addressed to survival of actions and not to punitive damages as a remedy. *See Dunwoody v. Trapnell,* 47 Cal.App.3d 367, 120 Cal.Rptr. 859 (1975).

**7.** Strict scrutiny is the test applied to suspect classifications, i. e., race or classifications involving fundamental rights.

**8.** Rational basis groups all other classification considerations, i. e., economic or social legislation. *But see Craig v. Boren* (infra).

of realistic settlements. These reasons are not expressed legislative intent but merely the ingenious advocacy of counsel for defendants of what this Court ought to accept as a legislative purpose. Unfortunately, the paucity or complete absence of legislative history for both C.C.P. § 377 and C.C. § 3294 does not permit a clear view of what the concern of the California legislators was in the enactment and/or amendment of these statutes. Nor have the California courts aided the search for reason in the interpretation of C.C.P. § 377. The Court is simply left with determining whether counsels' advocacy[9] as a substitute for legislative history can serve as a rational basis to support a constitutional interpretation of C.C.P. § 377 classifying wrongful death survivors differently than personal injury or property damage claimants vis-a-vis punitive damages.

One thing must be conceded at the outset. Both wrongful death and personal injury or property damage claimants in the context of these cases have had a right invaded by the same tortious act of a tortfeasor. In this connection the example set forth by the Court per the Honorable Peirson M. Hall bears repetition here:

Thus, under the law of California:

Assume a 14-year-old-boy was taking his goat to the county fair to win a prize, in a brand new station wagon, driven by his father, in which his mother was also riding; assume further that at an intersection with a green light in their favor, a car driven by a man who was being followed by the police, who had given him the signal to stop, willfully, wantonly, and maliciously drove through the red light at 80 miles an hour, hit the station wagon broadside, killing the father and the mother, breaking all four legs of the goat, completely demolishing the station wagon, and cutting off two fingers of one of the boy's hands.

California Civil Code, Section 3294 would permit the recovery of punitive damages as well as compensatory damages for injury to the goat, destruction of the station wagon and severance of the two fingers of the boy's hand. California law would not sanction the recovery of punitive damages for the death of either the mother or the father—the sole support of the boy—even though their deaths resulted from the same conduct that caused property damage and personal injury. *In re Paris Air Crash of March 3, 1974*, MDL No. 172. 410 F.Supp. 326, 328 (C.D.Cal.1976).

Although rights and duties in tort may derive from different common law or statutory authority, the common thread to recovery of damages is the act or acts of the tortfeasor. Punitive damages are addressed not to the right of recovery but rather to the *nature and gravity of the invasion* of a plaintiff's right. They are meant to guarantee that such conduct on the part of a tortfeasor will not be repeated against this plaintiff or any other person who may be the object of activity of this tortfeasor or some other tortfeasor in the future. Defendants' arguments simply misconceive how the rationality of California's classification must be considered.[10]

The Court is mindful that the rational basis test when applied to constitutional concerns of statutory enactment or application cannot be a subjective view of what this Court believes is best for society. The California and United States Constitutions each require that this Court address itself to equal protection of the law.

---

**9.** Whether in the absence of express legislative intent the Court can consider the arguments of counsel as to what the legislature has conceived as reasoning for denial of punitive damages in a wrongful death action is a question left open by the United States Supreme Court. *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 458, n.7, 50 L.Ed.2d 397, 408, n.7 (1976). For purposes of this opinion, it will be assumed that counsels' arguments are relevant to a determination of the legislative purpose.

**10.** As stated (supra), the *sole* purpose of punitive damages under California law is to *deter conduct of the defendant.* This Court does not purport to express an opinion as to those statutes and decisions in states other than California which premise exemplary damages on a theory of compensation only or a mixed theory of compensation and deterrence. *See* 22 Am. Jur.2d *Damages* § 237 (1965).

United States Constitution, Amendment 14 provides:

Section 1. . . . ; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

■ The equal protection clause of the 14th Amendment would facially appear to say "State legislature—if you legislate concerning people's rights—you *must* legislate equally." [11]  Supreme Court interpretation however has not dealt so simplistically with the concept. The gloss most expressive of the concept applicable to this case is found in *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), where the Supreme Court says:

Although no precise formula has. been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

366 U.S. at 425–26, 81 S.Ct. at 1105, 6 L.Ed.2d at 399. The Supreme Court has applied this rational basis concept to various legislative enactments. See *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (limitation of cart vendors); *American Motorists Insurance Company v. Starnes,* 425 U.S. 637, 96 S.Ct. 1800, 48 L.Ed.2d 263 (1976) (revenue statutes); *North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973) (regulation of pharmacy ownership); *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) (landlord-tenant procedures); *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) (regulation of ophthalmologists, optometrists, and opticians).[12]  The expressed legislative purpose of punitive damages in California is deterrence of tortious conduct committed oppressively, fraudulently or maliciously. Defendants have not advised the Court nor can the Court conceive of how depriving wrongful death claimants of punitive damages in any way serves or enhances the state's purpose in enactment of punitive damage legislation.

Conceivably, a state concern for excessive recoveries is a legitimate one. But again stating the concern does not indicate how that concern is served or enhanced by the discriminatory classification of wrongful death claimants differently than personal injury or property damage claimants. This is particularly true when it is remembered that it is egregious conduct of a tortfeasor that employs the need for the deterrence of punitive damages and not the nature of the harm caused by the conduct. Nowhere have defendants provided to the Court empirical data, nor have they indicated any empirical data available upon which a court could determine that verdicts are or would be any more excessive in wrongful death cases than personal injury or property damage cases. The conjured fears of defendants of the large verdicts possible in this case are ill-conceived. The total verdicts will be large not because these are wrong-

11. Cf. *Craig v. Boren* (supra), Stevens, J. concurring, 429 U.S. at 211, 97 S.Ct. at 464, 50 L.Ed.2d at 416 (1976).

12. Defendants have repeatedly asserted that the United States Supreme Court case of *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), has spelled the demise of the 'rational basis' test by expressly overruling *Morey v. Doud,* 359 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). The Court has merely indicated that today, on the same facts, *Morey v. Doud* would be decided the other way. That is all it says. The United States Supreme Court could not have intended to confer a limitless unscrutinized license to legislatures in the economic and social welfare arenas.

ful death cases but rather because this case involves claims for 346 deaths. Any measure of punitive damages must be made by comparison of one death to one personal injury. The balance must involve defendants of equal wealth and guilty of identical oppression, fraud, or malice. So measured, the rationality of the discriminatory classification attempted here disappears.

The proposed concern about marginal litigation has even less to commend it to rational thought. If avarice escalated by the fact of heirship or dependency is the claimed concern of defendants it simply falls before the eloquent reasoning of Justice Tobriner in *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968).

Suggesting that it may be honing a third edge to the equal protection sword, the United States Supreme Court in *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), struck down an Oklahoma statute on the basis of discrimination against a class of 18 year old males in the purchase of 3.2 beer in language which makes a particular classification constitutionally sound if it "serve[s] important governmental objectives and must be substantially related to achievement of those objectives." 429 U.S. at 197, 97 S.Ct. at 457, 50 L.Ed.2d at 407.[13]

■ It is clear that the mere fact that the California statutory purpose in allowing punitive damages is measured in monetary recovery to a particular plaintiff does not place the case ipso facto in the economic area thus commanding a rational basis analysis, e. g., the award of damages in a civil rights case does not place the right which serves as the basis for recovery in the economic arena. It is the *context* in which the right arises that must be examined. *Compare Lindsey v. Normet* (supra). Punitive damages emanate from the public's right to be free from oppressive, fraudulent or malicious conduct protected by the language of C.C. § 3294. That protection is personal and substantially within the protections accorded fundamental rights found expressly and impliedly in the Fifth and Fourteenth Amendments to the United States Constitution.[14]

Measured under the analysis of *Craig v. Boren* (supra) the California position on punitive damages becomes subsumed in the realization that defendants' counsel present no realistic relationship between the discriminatory classification made here and any governmental objective. And logic compels this Court otherwise.

We hold that denial of punitive damages in wrongful death cases while they are permitted in personal injury and property damage cases is violative of the equal protection of the laws guaranteed by the 14th Amendment of the United States Constitution.

The result under the California Constitution is even more compelling. Article I, Section 7(a) of the California Constitution provides:

> Sec. 7(a). A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws.

Article IV, Section 16(a) of the California Constitution provides:

> Sec. 16(a). All laws of a general nature have uniform operation.

California appellate courts have equated both these provisions to the 14th Amendment of the United States Constitution. *Brown v. Merlo,* 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973).

---

**13.** *See also, Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

**14.** This personal right is one that resides in the surviving wrongful death claimant as a member of the public separate and apart from the decedent's bundle of rights, duties, privileges and immunities. In other words, the aim of punitive damage legislation is to protect *the public* from a recurrence of willful, oppressive or malicious conduct by any tortfeasor contemplating the same or similar tortious conduct. It does not simply protect the person who may be a present but otherwise fleeting victim.

More recently in *Serrano v. Priest, II,* 18 Cal.3d 728, 135 Cal.Rptr. 345, 557 P.2d 929 (1976), the California Supreme Court has expressed an even broader consideration of California constitutional concern of equal protection when it says

> . . . our state equal protection provisions, while "substantially the equivalent of" the guarantees contained in the Fourteenth Amendment to the United States Constitution, are possessed of an independent vitality which, in a given case, may demand an analysis different from that which would obtain if only the federal standard were applicable.

Serrano II (supra) now gives real meaning to the views of the Court articulated in *Brown v. Merlo* (supra):

> . . . when a statute provides that one class shall receive different treatment than another, our constitutional provisions demand more "than nondiscriminatory application within the class . . . establish[ed] . . . [They] also [impose] *a requirement of some rationality in the nature of the class singled out.*

8 Cal.3d at 861, 106 Cal.Rptr. at 392, 506 P.2d at 216 (emphasis added).

Defendants urge that *Brown v. Merlo* (supra) has been overruled by *Schwalbe v. Jones,* 16 Cal.3d 514, 128 Cal.Rptr. 321, 546 P.2d 1033 (1976). Defendants' contention misreads *Schwalbe* (supra). Applying the same principles they did in *Brown v. Merlo* (supra) the majority simply comes to a different conclusion *on different facts.* The rationality of distinguishing between an owner of a vehicle who can exercise control over a driver permitted to drive the owner's vehicle and a guest who has no control does not cause this Court to find a reversal of California Supreme Court thought. What defendants appear to argue—relying on *Schwalbe* (supra)—is that any distinction by a state is conclusively presumed to be rational. That just is not the law. The acceptance of such a view would be an abdication of this Court's obligation to discern rationality before it places its constitutional imprimatur on discriminatory classification of litigants—potential and real.

Advocacy is a curious and beautiful thing. It permits the advocate to espouse at the same time points of view which may appear to be or not to be contrary. Defendants assume that role in this litigation. They have vigorously argued the constitutionality of the limitation of punitive damages on the one hand while also contending that the entire punitive damage concept is in violation of due process.

The resolution of this latter concern of defendants is necessary to a complete disposition of the punitive damage issues presented in this litigation. California appellate courts have addressed themselves to this question in *Toole v. Richardson-Merrell, Inc.,* 251 Cal.App.2d 689, 60 Cal.Rptr. 398 (1967); *Fletcher v. Western National Life Insurance Company,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970); *Wetherbee v. United Insurance Co.,* 18 Cal.App.3d 266, 95 Cal. Rptr. 678 (1971); and more recently by the California Supreme Court in *Bertero v. National General Corp.,* 13 Cal.3d 43, 118 Cal. Rptr. 184, 529 P.2d 608 (1974). That authority is compelling as to California constitutional law and is otherwise sufficiently persuasive to obviate the necessity of further prolixity in this opinion. The whole question of punitive damages is one that needs revisiting. That visitation must however be done by the legislature now hopefully made aware of the constitutional pitfalls that beset its consideration.

Ultimately and graphically this litigation points up the absurdity of the discriminatory classification that has been countenanced in California. If these same plaintiffs were in a position to prove as a practical reality personal injuries and/or property damage experienced by their decedents the entire question of punitive damages with which we have struggled would have been obviated. They could—through estate distribution under P.C. § 573—without question recover the *same* punitive damages they now claim in a different capacity. Is not a rose still a rose?

Certification pursuant to 28 U.S.C. § 1292(b).

The Court is of the opinion that a controlling question of law has been decided here and an immediate appeal of the decision would materially advance the ultimate termination of this litigation. The matter is certified pursuant to 28 U.S.C. § 1292(b) for immediate appeal.